IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MICHAEL FLOYD WILSON**                                                              **PLAINTIFF**

**VERSUS**                               **CIVIL ACTION NO. 5:22-cv-00042-DCB-BWR**

**M.T.C.**                                                                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

Proceeding under 42 U.S.C. § 1983, *pro se* Plaintiff Michael Floyd Wilson filed this lawsuit on June 13, 2022, and his allegations were clarified at an Omnibus Hearing on January 4, 2023.[1] *See* Compl, [1]. Wilson is an inmate housed in the custody of the Mississippi Department of Corrections ("MDOC") at the Walnut Grove Correctional Facility in Walnut Grove, Mississippi. *Id*. at 2. Wilson names M.T.C. as Defendant, *id*., and he is proceeding *in forma pauperis*, Order [6].[2] Before the Court is the Motion [22] for Summary Judgment filed by M.T.C. Wilson responded [24] [27], and M.T.C. replied [25]. The Motion [22] being fully briefed, and for the following reasons, the undersigned recommends that the Motion [22] for Summary Judgment be denied and that Wilson's failure-to-protect claim be allowed to proceed. The undersigned also recommends that Wilson's medical-care claim be dismissed

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

[2] Because Wilson is proceeding *in forma pauperis*, his claims are also subject to *sua sponte* evaluation and dismissal under 28 U.S.C. § 1915(e)(2). *See, e.g., Smith v. Anderson*, No. 2:11-cv-00221-KS-MTP, 2013 WL 1182995, at *1 (S.D. Miss. Feb. 13, 2013) (dismissing a case based on a motion for summary judgment and a "*sua sponte* . . . evaluation pursuant to 28 U.S.C. § 1915(e)(2)"), *report and recommendation adopted by* 2013 WL 1182984, at *1 (S.D. Miss. Mar. 21, 2013).

with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

## I. BACKGROUND

### A. Wilson's Allegations

The following allegations are drawn from Wilson's pleadings and his testimony at the Omnibus Hearing. Wilson claims that Inmate Tevin Stricklen assaulted him with a steel padlock on August 23, 2021, while they were housed at the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi.[3] Compl. [1] at 3-5. As a result, Wilson allegedly suffered broken cheek bones, a broken eye socket (causing severe vision loss), and a collapsed nasal cavity. *Id.* at 5. He says that he underwent surgery and now has "some type of metal plate holding [his] face together." *Id.* Because of his injuries, Wilson finds it difficult to open his mouth and suffers from chronic headaches. *Id.*

Wilson says that he requested to be moved to another prison before the assault because he "was in fear of losing [his] life" at WCCF. *Id.* Moreover, Wilson testified at the Omnibus Hearing that he specifically complained to M.T.C. about Stricklen—both verbally and in writing—approximately two weeks before the assault occurred. Wilson allegedly advised a unit manager, a case manager, and a lieutenant that he was afraid that Stricklen would kill him in his sleep. Wilson testified that he "red tagged" Stricklen, or flagged to keep him separate, after the assault occurred.

---

[3] WCCF is "operated by Management & Training Corporation (MTC)" for MDOC. *See* https://www.mtctrains.com/facility/wilkinson-county-correctional-facility/ (last accessed June 19, 2023).

2

Wilson blames M.T.C. for failing to protect him from that assault and for denying his many requests to be sent to another prison. Compl. [1] at 4. He also blames M.T.C. for delaying his medical treatment after the assault for "a total of (25) days." *Id*. at 5. For relief, Wilson originally sought a total of $130,000 in damages, *id*., but he testified that he would accept payment of his medical bills and court costs, plus a small settlement on his inmate account.

### B. M.T.C.'s Evidence

M.T.C. does not dispute that Stricklen attacked Wilson with a padlock. *See* Mot. [22] at 1. Instead, M.T.C. says that Wilson never specifically complained about Stricklen, depriving M.T.C. of notice that Stricklen may pose a threat. *Id*. In support, M.T.C. included as exhibits several of Wilson's administrative grievances, along with a list of inmates that he "red tagged."

On July 12, 2017, Wilson submitted a "request for administrative remedy," asking to be housed in protective custody. Mot. [22-1] at 3-4. When he was transferred to WCCF on March 24, 2017, Wilson was placed in a two-man cell with an unnamed cell mate (who was *not* Stricklen)—despite informing an officer that he had "problems" with the other inmate at his last facility. *Id*. at 3; *see also* Mem. [23] at 1. As a result, Wilson claims that his cell mate "stabbed [him] in [his] chest with a shank." *Id*. Even after Wilson was moved to another cell, he "was assaulted by [unnamed] gang members twice," and his report to a case manager went unheeded. *Id*.

3

In response to Wilson's administrative grievance, correctional staff advised that he was currently being housed in a one-man cell in administrative segregation. *Id*. at 6, 10. He was advised "to complete and submit an Inmate Transfer Request Form" and that the final decision on his transfer request would be made by MDOC officials. *Id*. at 10. Wilson was also advised "to complete and submit red tag(s)" on any offenders threatening his life. *Id*. During his incarceration, Wilson has apparently "red tagged" 29 other inmates—but Stricklen is not reflected on that list. Resp. [25-1] at 1-3.

Instead, on August 17, 2017, Wilson filed an emergency administrative grievance, requesting again to be placed in protective custody because he had "been stabbed and assaulted," he "fear[ed] for his life," and he had "a hit out on [him]" by unnamed gang members at WCCF. Mot. [22-2] at 2. The Director of MDOC's Administrative Remedy Program refused to treat Wilson's grievance as an emergency, finding that "this issue [did not meet] the criteria for emergency review." *Id*. at 1.

Wilson filed yet another administrative grievance on September 8, 2017, claiming that he "was stabbed in [his] head and [had his] teeth knocked out" *after* filing his first emergency request. Mot. [22-3] at 3. Wilson reported that, to date, he had been stabbed twice at WCCF because gang members "want[ed] to make a name . . . by being the one to kill [him]." *Id*. This request was treated as an emergency but was returned to Wilson because it was raised while his first request filed on July 12,

4

2017, was still pending. *Id.* at 1.

Finally, on February 26, 2018, Wilson filed another administrative grievance asking to be "transferred to another facility as soon as possible." Mot. [22-4] at 2. He claimed that inmate Alex Jenkins "stabbed" him and another inmate but was not punished. *Id.* As a result, Wilson said he was "forced to live in fear [for his] life," and he reported concern "for [his] personal safety and mental well being." *Id.* Again, MDOC refused to treat Wilson's request as an emergency. *Id.* at 1. Wilson admits that these older grievances have "nothing to do with what happen[e]d in 2021." Resp. [24] at 1.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an

absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

### III. DISCUSSION

Liberally construing Wilson's pleadings, he raises two claims: (1) M.T.C.'s failure to protect him from Stricklen's assault; and (2) M.T.C.'s delaying medical care. Genuine disputes of material fact preclude the entry of summary judgment on Wilson's failure-to-protect claim, and the undersigned recommends that M.T.C.'s Motion [22] for Summary Judgment be denied. But the undersigned recommends that Wilson's medical-care claim be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

#### A. Failure to Protect

"Under the Eighth Amendment, prison officials have a duty to protect inmates

from violence by fellow inmates." *Fairley v. McGee*, No. 2:12-cv-00045-MTP, 2013 WL 5567122, at *3 (S.D. Miss. Oct. 9, 2013); *see also Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). But not every injury at the hands of another inmate rises to the level of a constitutional violation. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995). "To prevail on a failure to protect claim, [Wilson] must show that 'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *See Fairley*, 2013 WL 5567122, at *3 (quoting *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999)).

A prison official is deliberately indifferent when (1) he is "aware of . . . the 'facts from which the inference could be drawn that a substantial risk of serious harm exists,'" and (2) "'he . . . draw[s] the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). In other words, Wilson "must allege that prison 'personnel knew of a substantial risk of serious harm and failed to act.'" *See Lewis v. Csaszak*, No. 1:20-cv-00256-TBM-RPM, 2022 WL 6873673, at *3 (S.D. Miss. July 13, 2022) (quoting *Vela v. Garcia*, 728 F. App'x 285, 287 (5th Cir. 2018)). "The test for establishing deliberate indifference is one of subjective recklessness as used in the criminal law." *Fairley*, 2013 WL 5567122, at *3 (quotation omitted). Deliberate indifference "is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

The evidence before the Court reveals a genuine dispute about whether M.T.C. knew or had reason to know that Stricklen planned to attack Wilson. *See Morris v.*

7

*Collins*, No. 4:07-cv-00125-JCS, 2009 WL 963673, at *1 (S.D. Miss. Apr. 8, 2009) (granting summary judgment where the defendant "did not know, and had no reason to know, that [an assailant] planned to attack [the plaintiff]"). Wilson testified at the Omnibus Hearing that he told M.T.C. employees two weeks before the assault that he feared for his life at Stricklen's hands. And Wilson's testimony at the Omnibus Hearing constitutes competent summary-judgment evidence. *E.g.*, *Falcon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (concluding that "sworn testimony at [a] *Spears* hearing [is] . . . relevant to the court's summary judgment review"); *Evans v. Mississippi*, No. 2:11-cv-002, 2012 WL 4480731, at *4 n.3 (S.D. Miss. Sept. 26, 2012) ("[T]he Court considers . . . sworn testimony at the *Spears* hearing to be competent summary judgment evidence."). To counter, M.T.C. presented evidence that Wilson never "red tagged" Stricklen, Resp. [25-1] at 1-3, but it presented no evidence to contradict Wilson's testimony that he informally reported his fears about Stricklen before the assault occurred. *See Edmond v. Eaves*, 70 F. App'x 159, 160 (5th Cir. 2003) (reversing dismissal of failure-to-protect claim where plaintiff "communicated . . . threats to his supervisor" and "his repeated requests to be transferred to another unit . . . were denied").

Considering the evidence in the light most favorable to Wilson, as we must at this stage, the undersigned cannot conclude that M.T.C. is entitled to judgment as a matter of law on Wilson's failure-to-protect claim. *See Hmeid v. Nelson Coleman Corr. Ctr.*, No. 18-3449, 2019 WL 5294936, at *4 (E.D. La. Oct. 18, 2019) (denying

8

summary judgment where "the sworn testimony of plaintiff obtained during the *Spears* hearing conflict[ed] directly with the sworn statements of defendants, creating various issues of disputed material fact"). In light of the foregoing, the undersigned recommends that M.T.C.'s Motion [22] for Summary Judgment on Wilson's failure-to-protect claim be denied.

### B. Delayed Medical Care

Wilson also claims that M.T.C. delayed providing him with adequate medical care following Stricklen's attack.[4] Compl. [1] at 5. Specifically, Wilson needed "major surgery," but "it took a total of [twenty-five] days for . . . M.T.C. to get [it] done." *Id.*

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Tex. Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004). "To establish an Eighth Amendment violation for delay in medical care, [Wilson] must show deliberate indifference to his serious medical needs and that the delay resulted in substantial harm." *See Jones v. Perry*, No. 2:11-cv-00044-MTP, 2012 WL 3267540, at *3 (S.D. Miss. Aug. 9, 2012). "Mere delay in receiving care is not in and of itself a violation." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Wilson's "disagreement with the speed, quality, or extent of medical treatment . . . do[es] not give rise to a Section 1983 claim." *See Jones*, 2012 WL 3267540, at *3 (quotation

---

[4] M.T.C. did not address Wilson's medical-care claim in its Motion [22], but the undersigned finds it appropriate to address that claim *sua sponte*. *See supra* n.2.

omitted).

Wilson has failed to state an Eighth Amendment violation for delayed medical care because he has not alleged facts sufficient to show that M.T.C. was deliberately indifferent to his serious medical need. Though he suffered severe injuries as a result of Stricklen's attack, Wilson testified at the Omnibus Hearing that he was taken to the hospital within four hours. He also admits to having a "metal plate holding [his] face together" and "pins and screws in his eye socket." Compl. [1] at 5. That is, M.T.C. apparently appreciated the extent of Wilson's injuries and acted within twenty-five days to ensure that he received the "major surgery" he needed. *See id*. The undersigned notes that a period of three weeks is not facially excessive for the evaluation, diagnosis, and planning needed to prepare for "major surgery." *See id*. Thus, Wilson has failed to state a constitutional claim for delayed medical care under 28 U.S.C. § 1915(e)(2)(B)(ii), and the undersigned recommends this claim be dismissed with prejudice for that reason.

## IV. RECOMMENDATION

The Motion [22] for Summary Judgment filed by M.T.C. should be denied. M.T.C. is not entitled to judgment as a matter of law on Wilson's failure-to-protect claim, and that claim should proceed. To the contrary, Wilson's medical-care claim should be dismissed with prejudice for failure to state a claim.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and

Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L. U. Civ. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 29th day of June, 2023.

*s/* *Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE